John Henry **KENNER**, Appellant,

v.

**UNITED STATES** of America, Appellee.

No. 16576.

United States Court of Appeals
Eighth Circuit.

Dec. 21, 1960.

Charles Clayton, St. Louis, Mo., for appellant.

William C. Martin, Asst. U. S. Atty., William H. Webster, U. S. Atty., St. Louis, Mo., on the brief, for appellee.

Before VOGEL and BLACKMUN, Circuit Judges, and DAVIES, District Judge.

VOGEL, Circuit Judge.

John Henry Kenner, appellant herein, was convicted by a jury on January 19, 1960, on two counts of an indictment involving violations of §§ 4742(a) and 4744 (a), Title 26 U.S.C.A. He was sentenced to imprisonment for a period of five years on the first count and seven years on the second, the sentences to run concurrently. The appeal here is for the purpose of determining whether or not the trial court committed error in the denial of motions under § 4244, Title 18 U.S.C.A., requesting an examination by a psychiatrist and made by appellant through his court-appointed counsel prior to trial. A motion was first made orally before the court on October 16, 1959, when appellant appeared for possible waiver of indictment. Upon reading a Probation Office report, indicating that the appellant had been examined at the Medical Center at Springfield, Missouri, and other places prior thereto, the court denied the motion. On December 4, 1959. appellant again moved for an examination, the motion taking the form of an affidavit made by counsel setting forth that in his opinion there was a definite need for a psychiatrist to determine the question of sanity. Counsel stated, in orally arguing the motion, that:

> "But the thing is, I have found him to be incoherent in speech. He has not been able to assist in his defense by giving me even a straight story as to the facts in the case."

The motion was overruled.

Section 4244, Title 18 U.S.C.A., provides that:

> "Whenever * * * the United States Attorney has reasonable cause to believe that a person charged with

an offense against the United States may be presently insane or otherwise so mentally incompetent as to be unable to understand the proceedings against him or properly to assist in his own defense, he shall file a motion for a judicial determination of such mental competency of the accused, setting forth the ground for such belief with the trial court in which proceedings are pending. Upon such a motion *or upon a similar motion in behalf of the accused,* or upon its own motion, *the court shall cause the accused * * * to be examined as to his mental condition by at least one qualified psychiatrist,* who shall report to the court. * * * " (Emphasis supplied.)

It is the contention of the government that the information contained in the pre-sentence report made by a Probation Officer was sufficient basis for the trial court's denial of appellant's motion for a psychiatric examination under § 4244. That report, marked Exhibit C herein, indicates, inter alia, that in July, 1952, in an Army hospital in Japan, he had an operation for the removal of bone fragments from his brain caused by a gunshot wound occurring in 1949 and that a tantalum plate was applied to the skull; that he had a history of "black-out spells"; that he was scheduled to report to the Veterans Administration Hospital in St. Louis on October 5, 1959, to determine the cause of the alleged "black-out spells". The report includes the Probation Officer's summary of the appellant's file in a Veterans Administration Regional Office in St. Louis. The summary indicated that the appellant was given a psychiatric examination while in the army in December, 1952; that "His mental status was described as moderately retarded, dull. No evidence of psychosis; not insane; knew the difference between right and wrong. Diagnosis: Anti-social personality." The report also indicates that the appellant was given a psychiatric examination at the United States Army Hospital at Fort McClellan,

Alabama, in May, 1953; that the diagnosis was "Anti-social personality, severe, based on pathological lying, criminalism, misconduct, habitual shirker, etc. Was mentally responsible and knew the difference between right and wrong."

■ The only question here is: Did such information justify the trial court's denial of appellant's motion? We think it did not and that error was committed in the denial. Nothing in the record justifies the conclusion that the motion in behalf of the appellant was frivolous or not made in good faith. The two psychiatric examinations, of which the court had only a Probation Officer's summary, were made a number of years prior thereto. Appellant suffered a serious brain injury, had a history of "black-out spells", was about to be examined by the Veterans Administration because thereof, and his court-appointed counsel claimed he was unable to assist in his defense, hence the examination was "necessary in the interests of justice". Certainly this showing not only justified but required under the terms of the statute the granting of the motion and the ordering of the examination by at least one qualified psychiatrist.

The United States Court of Appeals for the District of Columbia in a similar situation in Wear v. United States, 1954, 94 U.S.App.D.C. 325, 218 F.2d 24, held, at page 26:

"When the claim of insanity is not frivolous, to allow the court to determine that there is no cause to believe that an accused may be insane or otherwise mentally incompetent would be inconsistent with the legislative purpose to provide for the detection of mental disorders 'not * * * readily apparent to the eye of the layman.'

\* \* \* \* \* \*

"We therefore hold that a motion on behalf of an accused for a mental examination, made in good faith and not frivolous, must be granted under the statute."

In Krupnick v. United States, 8 Cir., 1959, 264 F.2d 213, this court, construing § 4244, said at page 216:

"Except where it is possible to hold that the ground stated for belief is frivolous, or where otherwise, on the face of elements in the situation which the court may judicially notice, it can be said that the motion is not made in good faith, the mandate of the statute appears to be absolute in its preliminary requirement—'the court shall cause the accused * * * to be examined as to his mental condition by at least one qualified psychiatrist.'

"The court therefore must cause such an examination to be made in every case, where a motion is filed that cannot be declared to be without good faith or to be frivolous, and where the grounds set forth thus can constitute reasonable cause to believe that the accused '*may be* presently insane or otherwise so mentally incompetent as to be unable to understand the proceedings against him or properly to assist in his own defense.' (Emphasis supplied.)

"The statute does not provide for a framing of issue or a receiving of evidence on the question of cause for belief, so as to allow the court to weigh other facts against the grounds set out in the motion. And no intent to allow the court to engage in such a preliminary weighing of facts can be implied, for the language of the section is that 'Upon such a motion * * * the court shall cause the accused * * * to be examined * * *.' Indeed, for a court to undertake to resolve whether the elements of 'reasonable cause to believe' impress as being preponderant or nonpreponderant in a particular situation, and to refuse on the basis of such a relative balancing to have a psychiatric examination made of the accused, would be for the court to obliquely pass upon the question of the accused's competency to stand trial or properly to assist in his own defense, and to make such an indirect consideration take the place of the examination, hearing and specific finding for which the statute provides."

■ In that case, as in the instant one, the appellant was tried and convicted subsequent to the court's denial of his motion for the examination. While concluding that it was error to deny the motion for the examination, we nevertheless held, at page 218, that that

"* * * does not mean that appellant is entitled to have his sentence vacated. He would be entitled to have his sentence vacated only if it is invalid. It would not be invalid, if he was mentally competent to stand trial, in that he was at the time able to understand the proceedings against him and properly to assist in his own defense, so that his conviction did not rest on process void from insanity.

"His mental competency in this respect is subject to a nunc pro tunc determination. Cf. Lloyd v. United States, 101 U.S.App.D.C. 116, 247 F.2d 522; Wells v. United States, 99 U.S.App.D.C. 310, 239 F.2d 931."

The situation here requires like result and Kenner's request for reversal must presently be refused. If he was mentally competent to stand trial at the time so as to understand the proceedings against him and to properly assist in his own defense, then his conviction was not invalid and must stand. As in Krupnick, appellant's mental competency is subject to a *nunc pro tunc* determination.

■ The government suggests that if there was error here, it became harmless in view of a "psychiatric diagnosis" made at the Federal Penitentiary a few weeks after sentence. That examination, however, appears to have been no more than a "neuropsychiatric interview" and we cannot say from the record that it was one made by a qualified psychiatrist, as required by the statute. Additionally, it draws no conclusion excepting the

purely negative one that it fails to show that appellant was or is incompetent. We accordingly conclude that the error did not become harmless.

We take this occasion to express appreciation to Mr. Charles Clayton, court-appointed counsel, for his unremunerated services to the appellant and his assistance to this court.

Remanded for proceedings not inconsistent herewith.